(No. 5982—Claimant

JOHN W. DEVER AND MARGARET DEVER, for the use of the TRAVELERS INSURANCE COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 18, 1974.*

BARASH & STOERZBACH, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; DOUGLAS G. OLSON, Assistant Attorney General, for Respondent.

PERLIN, C. J.

This cause was submitted upon the joint stipulation of the parties. On April 23, 1970, one Elizabeth Hart, a patient of the Galesburg State Research Hospital, escaped from an unlocked ward in the hospital and broke into the nearby home of John and Margaret Dever. She did a considerable amount of damage to the furnishings and the interior of the home before being apprehended by the hospital security force.

The degree of care owed by the State in operating a

mental institution was considered by this Court in *Callbeck* v. *State of Illinois*, 22 C.C.R. 722. There we said,

"The State, in operating a mental institution, and caring for mentally ill persons, is, of course, not an insurer of the safety of its employees. The State is, however, under the same duty as a private person or institution having custody of insane persons. It is required to exercise reasonable care in restraining and controlling dangerous, insane persons committed to its custody, so that they will not have the opportunity to inflict a foreseeable injury upon others."

Thus to recover for the property damage inflicted by Elizabeth Hart, claimant, was obligated to prove by a preponderance of the evidence that respondent did not use reasonable care in restraining and controlling Elizabeth Hart.

We find that claimant has sustained its burden of proof. The hospital records introduced into evidence establish that Elizabeth Hart had a history of violent outbursts, and that the hospital did not take reasonable precautions toward controlling her.

On April 30, 1970, following Elizabeth Hart's escape, Dr. Angelo F. Zocchi, the Clinical Director of the Hospital, prepared a memorandum on the incident for Dr. Thomas T. Tourletes, the hospital superintendant. That memorandum establishes that the State had knowledge of the patient's potential for destructive outbursts:

"After pursuing through two voluminous folders of the abovenamed, it is more than obvious that this girl has a long standing history of mental illness and impulsive acting out, dangerous to herself and to others.

At the time of her admission here in 1965 she was admitted on the basis of the certificates of two physicians describing her as violent, uncontrollable and disoriented, she was immediately placed on the security ward after she attempted to strangle the ambulance driver with whom she was riding.

On April 23, 1970, the patient was transferred from C-28 to D-22 because of inability to sleep, a state of tension, and a demanding and negativistic attitude. She received an IM of Thorazine around midnight and at 1:15 a.m. she was transferred to D-21. About eight hours later at 9:45 a.m. she was returned to C-28. The incident books and nursing notes do not indicate if an

O.D. had been contacted and ordered the transfer back to Ward C-28. Dr. Haim explains her return to C-28 as 'routine' due to the fact that she was on a day treatment on C-28. However, this would not explain why she was still on C-28 on the night of April 23."

It is significant that Dr. Tourletes, the supervisor of the hospital, responded to the memorandum of Dr. Zocchi by writing, "It is apparent that responsible personnel must be made aware and alert to this patient's behavior and be required to manage her accordingly in the future."

The hospital staff is charged with constructive knowledge of a patient's behavioral history, particularly when the patient's file reflects violent, uncontrollable and disoriented conduct. *Clifton v. State of Illinois,* 24 C.C.R. 404. It is clear that Elizabeth Hart had a history of assaultive behavior and had a foreseeable propensity to inflict personal and property damage. It is also clear that she was improperly assigned to an unlocked ward, C-28, during the daytime, from which she made her escape.

In the opinion of this Court, the negligence of Respondent has been established by a preponderence of the evidence.

The parties have stipulated that claimants were damaged in the amount of $566.18.

Claimant is hereby awarded the sum of $556.18.